UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | NO. CR-07-0086-LRS |
|     Plaintiff, ) | |
| ) | **ORDER DENYING** |
| v. ) | **MOTION FOR ACQUITTAL** |
| ) | **AND FOR NEW TRIAL** |
| JOHN VIGIL, ) | |
|     Defendant. ) | |

**BEFORE THE COURT** is the Defendant's Motion For Acquittal And For New Trial (Ct. Rec. 118). The motion was heard with oral argument on March 26, 2008. Jared C. Kimball, Esq., appeared for the United States. Terence M. Ryan, Esq., appeared for the Defendant.

## I. BACKGROUND

Jury trial was conducted in this matter on November 27-30, 2007. On November 30, the jury returned guilty verdicts against the Defendant on Count 1 of the Superseding Indictment, Armed Robbery, in violation of 18 U.S.C. §2113(a), (d), and Count 2, Attempted Witness Tampering, in violation of 18 U.S.C. §1512(b)(1), (2)(a).

## II. DISCUSSION

### A. Motion For Acquittal

A motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c)

must be granted when the evidence, viewed in the light most favorable to the government, is such that a reasonable juror must have a reasonable doubt as to the existence of any essential element of the crime charged.  Conversely, if a reasonable juror would not have a reasonable doubt as to the existence of any essential element of the crime charged, the court should not disturb the finding of guilt.  *United States v. Yoshida*, 303 F.3d 1145, 1149 (9th Cir. 2002).

Defendant contends there is no evidence in the record to support his conviction for either armed robbery or attempted witness tampering.  The court disagrees.  Based on the evidence presented at trial, an accurate summary of which appears in the response brief of the United States at pp. 2-8, and viewing that evidence in a light most favorable to the government, a reasonable juror would not have a reasonable doubt as to the existence of any essential element of the crimes of which Defendant was charged and convicted,

**B.  New Trial**

Pursuant to Fed. R. Crim. P. 33(a), upon motion of the defendant, the court may vacate any judgment and grant a new trial if the interest of justice so requires.  Defendant seeks a new trial based on four grounds.

**1.  Failure To Allow Defense To Further Question Michael Brooks**

Defendant contends the court erred in refusing to allow the defense to conduct further questioning of Michael Brooks on the issue of whether he had discussions with a government witness, Dustin Rockstrom, prior to the armed robbery, concerning the desire of Dustin Rockstrom to commit a robbery.

In his opening statement to the jury, counsel for the Defendant represented that Mr. Brooks would testify that prior to the robbery of which Defendant was convicted, Dustin Rockstrom spoke about robbing a bank or credit union.  When

**ORDER DENYING MOTION FOR
ACQUITTAL AND FOR NEW TRIAL  - 2**

Brooks was asked by defense counsel if he had any discussions with Rockstrom prior to the robbery pertaining to the commission of a crime, Brooks said "no." Defense counsel then asked whether Rockstrom had ever discussed with Brooks the commission of a robbery. This prompted an objection from the government which was sustained by the court, although Brooks nonetheless testified that there was "[n]o admission, no." At that point, the government asked the court to strike the portion of defense counsel's opening statement representing that Brooks would testify that Dustin Rockstrom had spoken about robbing a bank or credit union prior to commission of the robbery. The court granted the request and instructed the jury to ignore that portion of defense counsel's opening statement. On redirect, defense counsel asked whether in the last three years, Brooks had had any discussions with Rockstrom about him committing an armed robbery. The government objected and the court sustained the objection.

Based on Brooks' unequivocal answer of "no" when asked whether he had any discussions with Rockstrom prior to the robbery concerning the commission of a crime, and his testimony that Rockstrom never made any admission about involvement in the robbery, even when subsequent to the robbery he offered Brooks money to provide him (Rockstrom) with an alibi, the court did not err in foreclosing the defense from further questioning in this regard. Allowing any further questioning would have confused the jury and been irrelevant.

**2. Allowing Testimony From Dustin Rockstrom Re Threats From The Defendant**

Defendant contends it was error to allow Rockstrom to offer testimony implying he had received threats from the Defendant as there was no discovery regarding any threats which may have been received by Rockstrom, and no evidence to tie any of the alleged threats to the Defendant.

**ORDER DENYING MOTION FOR ACQUITTAL AND FOR NEW TRIAL - 3**

During direct examination by the government, Rockstrom was asked whether while he was in jail (on the Accessory After The Fact charge to which he eventually pled guilty), he had received any threats. Rockstrom responded in the affirmative and testified that while he was working in the kitchen, there were trays coming down, apparently with notes on them, saying he was a rat and a snitch. Defense counsel objected on the basis that he did not know who was responsible for this. The court sustained the objection and the Assistant U.S. Attorney then asked Rockstrom if the Defendant specifically had made any threats against him while he was in jail. Defense counsel did not object to this question or the answer that followed. Rockstrom answered that there was a note passed down on a tray and that the Defendant called him a "federal snitch." Rockstrom added that other inmates who were apparently housed with the Defendant made threats against Rockstrom. Rockstrom testified that the Defendant visited him a couple of times while Rockstrom was in custody and that he told Rockstrom to stay strong and not be a "rat."

Rockstrom's testimony reasonably indicated that Defendant was responsible for a note passed down on a tray which labeled Rockstrom as a "federal snitch." Rockstrom testified that Defendant told him face to face not to be a "rat." This is not, as Defendant contends, "amorphous testimony . . . which . . . implied that [Rockstrom] had received threats from defendant John R. Vigil." This was direct evidence tying the threats to the Defendant. Defense counsel did not object to Rockstrom's testimony in this regard and he had an opportunity to cross-examine Rockstrom about these alleged threats, but did not do so. Defense counsel did cross-examine Rockstrom about other matters and had him admit that he lied to the FBI at least on two occasions regarding details about the robbery and its aftermath. Defendant suggests the aforementioned threats should have been revealed to him in discovery provided by the government, but there is no

**ORDER DENYING MOTION FOR
ACQUITTAL AND FOR NEW TRIAL  - 4**

1 indication that this type of information would have and should have been
2 contained in any discovery.  The inquiry about threats was relevant as background
3 explaining why Rockstrom was eventually willing to talk to the FBI about his role
4 and the Defendant's role in the robbery.  There was no error in allowing the
5 testimony.

### 3. Jury Instruction Re Attempted Witness Tampering

Defendant claims it was error for the court to fail to define the phrase "misleading conduct" in Jury Instruction No. 7.  This instruction stated that attempted witness tampering occurs when someone "knowingly attempts to use intimidation, corrupt persuasion, or misleading conduct with the intent to influence the testimony of any person in an official proceeding or to cause or induce any person to withhold testimony from an official proceeding."  The instruction defined "intimidation" and "corrupt persuasion," but did not define "misleading conduct."

At trial, defense counsel took exception to Instruction No. 7 on the basis that it did not define "misleading conduct," although he acknowledged he did not know if there was such a definition.[1]  The court explained that it would not provide a definition of "misleading conduct" for two reasons, one being that no definition was provided in the pattern instruction which the court used and the court could find no case law defining that term.  Secondly, the court felt that "misleading conduct" had a common sense meaning understandable by lay

---

[1] Instruction No. 7 was Instruction No. 8 in the preliminary draft instructions provided to counsel.  Accordingly, defense counsel referred to Instruction No. 8 in making his exceptions.  Instruction No. 8 in the draft instructions became Instruction No. 7 in the final instructions submitted to the jury.

**ORDER DENYING MOTION FOR**
**ACQUITTAL AND FOR NEW TRIAL  - 5**

persons. During its deliberations, the jury did not ask the court to define "misleading conduct."

Whether a term in a jury instruction requires definition normally turns on whether it expresses a concept within the jury's ordinary experience. No prejudice results from a district court's failure to define a concept "within the comprehension of the average juror." *U.S. v. Tirouda*, 394 F.3d 683, 688-89 (9th Cir. 2005). "Jury instructions, even if imperfect, are not a basis for overturning a conviction absent a showing that they prejudiced the defendant." *U.S. v. Frega*. 179 F.3d 793, 807 n. 16 (9th Cir. 1999). A trial court has substantial latitude so long as its instructions fairly and adequately cover the issues presented. *United States v. Garcia*, 37 F.3d 1359, 1364 (9th Cir. 1994).

The court reaffirms its holding at trial that "misleading conduct" is a concept within the comprehension of an average juror and that failure to define that term did not prejudice the Defendant. Stated differently, a typical juror would know that misleading conduct is a statement or course of action that tends to deceive or lead one astray or in the wrong direction.

### 4. Cumulative Effect

Defendant claims the cumulative effect of the aforementioned alleged errors prejudiced him. The court finds there was no error and hence, the Defendant was not prejudiced.

### III. CONCLUSION

Viewing the evidence presented at trial in the light most favorable to the government, this court concludes that a rational trier of fact would have found beyond a reasonable doubt the existence of each of the essential elements of the crimes of which the Defendant was convicted. Accordingly, Defendant's Motion

**ORDER DENYING MOTION FOR**
**ACQUITTAL AND FOR NEW TRIAL  - 6**

For Acquittal (Ct. Rec. 118) is **DENIED**.

No errors were committed which prejudiced the Defendant and therefore, the "interest of justice" does not require a new trial. Accordingly, Defendant's Motion For New Trial (Ct. Rec. 118) is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies to counsel.

**DATED** this   10th   day of April, 2008.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

**ORDER DENYING MOTION FOR ACQUITTAL AND FOR NEW TRIAL  - 7**